UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

W.A. and M.S. individually and o/b/o of
W.E.,

                                    Plaintiffs,

            v.

HENDRICK HUDSON CENTRAL
SCHOOL DISTRICT and KATHLEEN
COUGHLIN,

                                    Defendants.

Case No. 14-CV-8093 (KMK)

OPINION & ORDER

Appearances:

William A. Walsh, Esq.
Collier, Halpern, Newberg, Nolletti & Bock, LLP
White Plains, NY
*Counsel for Plaintiffs*

Caroline B. Lineen, Esq.
Lewis R. Silverman, Esq.
Silverman and Associates
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        W.A. and M.S. ("Plaintiffs") bring this Amended Complaint, individually and on behalf

of W.E., against Hendrick Hudson Central School District (the "District") and Kathleen

Coughlin ("Coughlin") (collectively, "Defendants"), alleging constitutional violations pursuant

to 42 U.S.C. § 1983 and claims brought under New York law.  (Dkt. No. 8.)  Before the Court is

Defendants' Motion To Dismiss Plaintiff's Amended Complaint ("Motion").  (Dkt. No. 30.)  For

the following reasons, the Motion is granted in part and denied in part.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and are taken as true for the purpose of resolving the instant Motion.

Plaintiffs are the parents of W.E., a 17-year-old student who has been classified with a disability under the Individuals with Disabilities Education Act ("IDEA").  (Am. Compl.  ¶¶ 1, 8 (Dkt. No. 8).)  W.E. resides with his parents in Westchester County but currently attends a private school in Lake Placid, New York.  (*Id.* ¶¶ 1, 8.)

In August 2011, Plaintiffs notified the Superintendent for the District ("the Superintendent") and Coughlin, the Director of Pupil Personal Services ("PPS"), of their intent to seek reimbursement of tuition at public expense from the District.  (*Id.* ¶ 18.)  That information was "released into the community within 72 hours," (*id.* ¶ 16), and several community members subsequently inquired about Plaintiffs' suit against the District, (*id.* ¶¶ 21–22, 25, 33–34).  According to the Amended Complaint, "District personnel [were] the only possible source," as "M.S. and W.A. had not released any information about a hearing or W.E.'s disability, except to District officials and/or employees."  (*Id.* ¶ 23.)  On October 5, 2011, M.S. wrote a letter to the Superintendent so as to document Plaintiffs' concerns and to request confidentiality.  (*Id.* ¶ 24.)

In September 2011, the District published personally identifiable information specific to W.E. in minutes of a meeting of the Board of Education of the District (the "Board").  (*Id.* ¶¶ 28–30.)  On or about December 8, 2011, W.A. requested that the minutes be amended to reflect a student ID number that was not personally identifiable to W.E. and that the information be

removed from the District's website.  (*Id.* ¶ 31.)[1]  The District did so in or about December 2011.  (*Id.* ¶ 32.)

Based on these alleged violations, W.A. and M.S. filed a complaint with the New York State Education Department ("NYSED") in August 2012.  (*Id.* ¶ 36.)  Upon investigation, NYSED "informed M.S. that the District, via . . . Coughlin, had admitted the violations and that knowledge about [Plaintiffs' suit against the District] was out in the community."  (*Id.*)  The District agreed to conduct employee training on the protection of confidential information, (*id.*), and as a result M.S. agreed to withdraw the complaint, (*id.* ¶ 37).  Training on the Family Educational Rights and Privacy Act ("FERPA") occurred on or about October 12, 2012.  (*Id.* ¶ 38.)  According to the Amended Complaint, "the training was not appropriate, adequate[,] or effective," (*id.*), and violations of confidentiality continued," (*id.* ¶ 39).

On June 19, 2013, M.S. and W.A. attended a Committee on Special Education (CSE) meeting, held to develop and update an Individualized Education Program ("IEP") for W.E.  (*Id.* ¶ 42.)  The CSE decided that W.E. needed an out-of-district program, and Coughlin identified five possible programs for placement, though, according to Plaintiffs, "the CSE had no functional knowledge about most of these programs."  (*Id.* ¶¶ 44–45.)  The District requested that Plaintiffs execute a consent form so that it could forward information for the possible placement of W.E.  (*Id.* ¶ 46.)  M.S. did not sign the consent form but instead took a copy and said she wished to consider it.  (*Id.* ¶ 47.)

---

[1] Although the Amended Complaint lists "December 8, 2012" as the date of this communication, (*see* Am. Compl. ¶ 31), the Court presumes that Plaintiffs intended to write "December 8, 2011," which corresponds to the surrounding factual allegations, (*see, e.g.*, *id.* ¶¶ 28–30 (alleging that the Board minutes from September 2011 contained personally identifiable information specific to W.E.); *id.* ¶ 32 (noting that the District amended the meeting minutes in or about December 2011)).

On June 24, 2013, the District again requested consent to send out information regarding W.E. to the identified potential placements. (*Id.* ¶ 49.) Plaintiffs advised the District that they required additional information regarding the suggested programs and why such programs might be appropriate for W.E. before they would consent to the forwarding of the referral packets. (*Id.* ¶ 50.) Plaintiffs did not execute the consent form. (*Id.* ¶ 52.)

On June 27, 2013, the District informed Plaintiffs that it would proceed with sending the referral packets to the identified potential placements. (*Id.* ¶ 54.) M.S. responded to Coughlin on July 1, 2013, stating that "the District lacked authorization to send out W.E.'s confidential information" and that the District still had sufficient time to provide Plaintiffs with further information regarding the suggested programs before forwarding the referral packets. (*Id.* ¶¶ 55–56.)

On July 11, 2013, Coughlin proceeded to forward W.E.'s psychiatric and special education records "without parental consent" and "in direct contravention of at least five . . . written parental directives not to send out such information." (*Id.* ¶ 57.)[2] The referral packets sent to the potential placements included: (1) a draft copy of W.E.'s 2013-14 IEP, (2) W.E.'s social history, (3) W.E.'s daily attendance records for most of the 2012-13 school year, (4) W.E.'s report card for the second marking period of the 2012-13 school year, (5) a neuropsychological evaluation for W.E., (6) teacher updates for W.E., (7) a District-drafted psychological evaluation of W.E., and (8) a psychiatric update for W.E. (*Id.* ¶ 58.) These

---

[2] Again, based on the surrounding factual allegations, (*see, e.g.*, Am. Compl. ¶ 42 (noting that Plaintiffs attended a CSE meeting on June 19, 2013); *id.* ¶ 63 (alleging that Plaintiffs were notified of the release on July 11, 2013)), and the allegations contained throughout the Amended Complaint, (*see, e.g.*, *id.* ¶ 9 (alleging Coughlin released and disclosed the records "[o]n or about July 11, 2013")), the Court assumes Plaintiffs meant "July 11, 2013," rather than "July 11, 2014," (*see id.* ¶ 54), as the date of the relevant disclosure.

records "contained highly confidential information about W.E., as well as personally traceable information, such as the name of the teachers at the small private school where the student attended." (*Id.* ¶ 60.)  The Superintendent had advance notice of "Coughlin's intent to forward these records . . . but took no action to restrain [her] or otherwise avoid the release of confidential records." (*Id.* ¶ 59.)  According to the Amended Complaint, the District had concluded that the forwarding of such information was not improper on the basis that certain information had been redacted from the documents. (*Id.* ¶ 62.)

On July 11, 2013, the District notified Plaintiffs, via email, that the referral packets had been forwarded. (*Id.* ¶ 63.)  Later that month, the District provided Plaintiffs' names and telephone numbers to two of the suggested programs. (*Id.* ¶¶ 66–67.)

B.  Procedural Background

On or about October 3, 2013, Plaintiffs served a timely Notice of Claim against the District, pursuant to New York General Municipal Law § 50-e. (*See* Decl. of Lewis R. Silverman, Esq. ("Silverman Decl.") Ex. C. (Dkt. No. 32).)[3]  On September 30, 2014, Plaintiffs commenced this Action by filing a Summons and Complaint in the Supreme Court for the State of New York, Westchester County. (*See* Silverman Decl. Ex. B.)  Defendants removed the case from New York State Supreme Court on October 8, 2014. (Dkt. No. 1.)

---

[3] Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality. *See Fincher v. Cty. of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997) (citing, inter alia, N.Y. Gen. Mun. Law § 50-e).  It must be filed within 90 days of when the claim arises and set forth in writing:

> (1) the name and post-office address of each claimant, and of his attorney, if any; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the items of damage or injuries claimed to have been sustained so far as then practicable.

N.Y. Gen. Mun. Law § 50-e.

Plaintiffs filed the Amended Complaint on December 2, 2014.  (Dkt. No. 8.)  Pursuant to a scheduling order adopted by the Court on December 15, 2014, (Dkt. No. 9), Defendants submitted their Motion To Dismiss and supporting papers on January 30, 2015, (Dkt. Nos. 30–33).  Plaintiffs filed their opposition papers on April 3, 2015, (Dkt. No. 34), and Defendants submitted their reply on April 28, 2015, (Dkt. No. 35).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

6

reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In addition, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all reasonable inferences in favor of the plaintiff."  *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Lastly, "[i]n ruling on a 12(b)(6) motion, . . . a court may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in [the] plaintiffs' possession or of which [the] plaintiffs had knowledge and relied on in bringing suit."  *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (alterations and internal quotation marks omitted); *see also Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d

Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its

consideration to facts stated on the face of the complaint, in documents appended to the

complaint or incorporated in the complaint by reference, and to matters of which judicial notice

may be taken." (internal quotation marks omitted)); *Hendrix v. City of N.Y.*, No. 12-CV-5011,

2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

### B.  Analysis

The Amended Complaint puts forth a number of claims stemming from the release of

W.E.'s confidential records in July 2013:  (1) Coughlin violated W.E.'s due process rights in

disclosing that confidential information, (*see* Am. Compl. ¶¶ 126–43), (2) Coughlin violated

W.E.'s rights under the Equal Protection Clause by selectively disclosing W.E.'s records, (*see id.*

¶¶ 144–63), (3) the District inadequately trained its employees regarding the protection of

confidential information, (*see id.* ¶¶ 102–14), and through Coughlin adopted a policy of

disclosing confidential records without consent, (*see id.* ¶¶ 115–25), (4) the District and

Coughlin negligently disclosed confidential records pertaining to W.E., (*see id.* ¶¶ 78–101), and

(5) the District and Coughlin violated W.E.'s right to privacy under New York law, (*see id.*

¶¶ 164–73).  Defendants, in turn, seek to dismiss all causes of action against them, pursuant to

Federal Rule of Civil Procedure 12(b)(6).  (*See generally* Defs.' Mem. of Law in Supp. of Mot.

to Dismiss ("Defs.' Mem.") (Dkt. No. 33).)[4]

---

[4] Throughout the Amended Complaint, Plaintiffs make a few vague references to the
First, Fourth, and Ninth Amendments. (*See* Am. Compl. ¶¶ 112, 123, 140.)  To the extent
Plaintiffs sought to pursue claims under these constitutional provisions, the Court deems such
claims abandoned, as Defendants moved to dismiss any claims under the First, Fourth, and Ninth
Amendments, (*see* Defs.' Mem. 11), and Plaintiffs did not oppose their dismissal, (*see generally*
Pls.' Mem. of Law in Opp'n to Mot. ("Pls.' Opp'n") (Dkt. No. 34); *cf.* Defs.' Reply Mem. of
Law in Supp. of Mot. 1 (Dkt. No. 35)).  Defendants, therefore, are entitled to dismissal of these
causes of action.  *See Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004)
(affirming that a "[c]ourt may, and generally will, deem a claim abandoned when a plaintiff fails

### 1.  Due Process

Plaintiffs allege that Coughlin violated W.E.'s due process rights when she "chose to ignore" the "[p]rocedural methods [that] existed to protect W.E.'s confidential records" and disclosed those records without parental consent.  (Am. Compl. ¶¶ 132–33.)

### a.  Right to Privacy

The courts have recognized a constitutional right to privacy that protects "the individual interest in avoiding disclosure of personal matters."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Doe v. City of N.Y.*, 15 F.3d 264, 267 (2d Cir. 1994)).  Specifically, the Second Circuit has held that the Due Process Clause of the Fourteenth Amendment protects a "right to privacy [that] can be characterized as a right to 'confidentiality,'" which "includes the right to protection regarding information about the state of one's health."  *Doe*, 15 F.3d at 267; *see also Rodgers v. Rensselaer Cty. Sheriff's Dep't*, No. 14-CV-1162, 2015 WL 4404788, at *5 (N.D.N.Y. July 17, 2015) ("The right to privacy and confidentiality of the status of one's health is a protected interest under the Fourteenth Amendment.").[5]

_____

to respond to a defendant's arguments that the claim should be dismissed"); *accord Cruz v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 13-CV-1335, 2014 WL 2547541, at *7 (S.D.N.Y. June 4, 2014) (deeming a claim abandoned where the "[p]laintiff declined to respond to [the] [d]efendant's argument" that the claim should be dismissed).

[5] In challenging Plaintiffs' due process claim, Defendants assert that their "research has not uncovered any cases from the Second Circuit that stand for the proposition that FERPA and/or [the Health Insurance Portability and Accountability Act ("HIPAA")] create constitutionally protected expectations of privacy in the applicable records."  (Defs.' Mem. 9.) That may be true, but it is clear from the face of the Amended Complaint that the cause of action at issue here is brought pursuant to the U.S. Constitution.  (*See, e.g.*, Am. Compl. ¶ 130 ("The Constitution . . . recognizes a right to privacy under the Due Process Clause of the Fourteenth Amendment."); *id.* ¶ 134 ("Coughlin's actions resulted in the deprivation of a life, liberty[,] or property interest protected within the Constitution, including the right of privacy, through the release and forwarding to multiple individuals of W.E.'s confidential records.").)  Thus, whether there is a private right of action for violations of FERPA or HIPAA is a distinct question from whether unauthorized disclosure of certain medical information might be a constitutional

In the instant Action, the Court finds that Plaintiffs have stated a viable privacy interest, as the Second Circuit has made clear that "[m]edical information in general, and information about a person's psychiatric health . . . in particular, is information of the most intimate kind." *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005); *see also Pelosi v. Spota*, 607 F. Supp. 2d 366, 372 (E.D.N.Y. 2009) ("[T]he Second Circuit has recognized that this constitutional right to privacy protects against disclosure of personal medical information.").  While "the interest in the privacy of medical information will vary with the condition," *Matson*, 631 F.3d at 64 (internal quotation marks omitted), at least some of the disclosed records—for example, a neuropsychological evaluation of W.E., a psychological evaluation of W.E., and a psychiatric update for W.E., (Am. Compl. ¶ 58),—are "excruciatingly private and intimate in nature," *Matson*, 631 F.3d at 64 (alteration and internal quotation marks omitted).  Such sensitive information pertaining to W.E.'s disability is precisely the sort that might "subject a person to societal discrimination and intolerance," *Rodgers*, 2015 WL 4404788, at *7 (citing *Doe*, 15 F.3d at 267); *see also Stout v. Town of Tonawanda Police Dep't*, No. 09-CV-261, 2011 WL 1260049, at *5 (W.D.N.Y. Mar. 31, 2011) (finding that the plaintiff stated a privacy claim where he "allege[d] he was diagnosed and being treated for two mental health illnesses," and "further allege[d] that [the defendant] knew this and intentionally disclosed his conditions publicly"),

---

violation.  *See Rodgers*, 2015 WL 4404788, at *7 (noting that the absence of a private right of action under HIPAA "does not preclude [a] Fourteenth Amendment right to privacy claim").

Nevertheless, given Plaintiffs' gratuitous assertion that "FERPA, along with other underlying federal and state regulations, further compliment the violation of the [c]onstitutional right of privacy," (Pls.' Opp'n 15), the Court takes a moment to note that neither FERPA nor HIPAA creates a private right of action, *see Gonzaga Univ. v. Doe*, 536 U.S. 273, 288 (2002) (reaffirming that "FERPA's nondisclosure provisions . . . cannot give rise to individual rights" (internal quotation marks omitted)); *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *17 (S.D.N.Y. Aug. 2, 2013) ("HIPAA does not provide a private cause of action through which individuals can enforce its provisions.").

especially in light of W.E.'s age, *see N.C. ex rel. M.C. v. Bedford Cent. Sch. Dist.*, 348 F. Supp. 2d 32, 37 (S.D.N.Y. 2004) (considering "[t]he [s]tudent's adolescence" in finding certain information to be "so personal that it should fall under the umbrella of privacy").

Thus, in alleging "the disclosure of confidential educational and medical records without consent and against the express identification of the lack of consent from W.E.'s parents," (Am. Compl. ¶ 6), Plaintiffs have plausibly pleaded a violation of a constitutionally protected interest.[6]

### b. Qualified Immunity

Defendants argue that Coughlin is entitled to qualified immunity from any constitutional violations alleged by Plaintiffs. (*See* Defs.' Mem. 14–15.)[7] Qualified immunity shields a "government official[] from liability for civil damages insofar as [his or her] conduct does not

---

[6] Notwithstanding Defendants' claim that "the District redacted personally identifiable information from the records in the referral packets," (Defs.' Mem. 10), the Court must accept as true Plaintiffs' allegation that "[t]he released documentation contained personally traceable information which was sufficient to identify the individual and, indeed, one of the recipients of the documents was able to identify the student based on the documents," (Am. Compl. ¶ 88; *see also* Pls.' Opp'n 16 (alleging Defendants "eliminated any benefit [they] saw in the minimal redactions performed on the documents when [Coughlin] disclosed . . . [P]laintiffs' name and telephone number to individuals")).

[7] Because qualified immunity "reflects an *immunity from suit* rather than a mere defense to liability . . . it is appropriate to decide the issue of qualified immunity, when raised, at an early stage of the litigation, such as when deciding a pre-answer motion to dismiss." *Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *4 (S.D.N.Y. Jan. 24, 2013) (internal quotation marks omitted), *aff'd*, 751 F.3d 78 (2d Cir. 2014). Nevertheless, when asserted at this stage in the proceeding, "the defense faces a formidable hurdle," and the defendant "must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 434, 436 (2d Cir. 2004); *see also Terebesi v. Solomon*, No. 09-CV-1436, 2010 WL 3926108, at *4 (D. Conn. Sept. 30, 2010) (same). "Not only must the facts supporting the defense appear on the face of the complaint, but the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his [of her] claim that would entitle him [or her] to relief." *Griffin v. City of N.Y.*, 880 F. Supp. 2d 384, 403 (E.D.N.Y. 2012) (alteration and internal quotation marks omitted); *see also Barnett v. Mount Vernon Police Dep't*, 523 F. App'x 811, 813 (2d Cir. 2013) (summary order) ("The defense will succeed only where entitlement to qualified immunity can be established based solely on facts appearing on the face of the complaint." (alteration and internal quotation marks omitted)).

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  This protection attaches "only if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir.) (internal quotation marks omitted), *cert. denied*, 135 S. Ct. 2335 (2015).  In this context, a court "is guided by two questions:  first, whether the facts show that the defendants' conduct violated [the] plaintiffs' constitutional rights, and second, whether the right was clearly established at the time of the defendants' actions." *Golodner v. Berliner*, 770 F.3d 196, 201 (2d Cir. 2014) (alterations and internal quotation marks omitted).

Having determined that the Amended Complaint adequately alleges a constitutional violation, the Court must address whether the right Plaintiffs seek to vindicate was clearly established at the time of the alleged violation.  This inquiry turns on three considerations:  "(1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question; and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010).  As these factors suggest, here the core question is whether Coughlin had fair warning that by disclosing W.E.'s confidential records without parental consent, she would violate his constitutional privacy rights.  *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (noting in context of a qualified immunity defense that "the salient question . . . is whether the state of the law [at the time of the alleged violation] gave [the defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional").

The Second Circuit has repeatedly recognized a constitutionally protected right to privacy in medical records. *See, e.g.*, *O'Connor*, 426 F.3d at 201 (explaining that the court "easily hold[s] that [the plaintiff] had a protected privacy right in the medical records [at issue]"); *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999) (recognizing "a constitutional right to maintain medical confidentiality"); *Doe*, 15 F.3d at 267 (recognizing that individuals "clearly possess a constitutional right to privacy regarding their [serious medical] condition"); *cf. Doe v. Town of Madison*, No. 09-CV-2005, 2010 WL 3829186, at *4 (D. Conn. Sept. 22, 2010) (noting that "[t]he right to confidentiality has been recognized with regard to certain categories of personal information," including with respect to medical records). Thus, notwithstanding Defendants' assertions to the contrary, (*see* Defs.' Mem. 15), the Court finds that W.E.'s constitutional right to privacy in his medical and special education records was clearly established as of 2013, when Coughlin is alleged to have disclosed that information without parental consent.[8]

As for whether Coughlin's disclosure of W.E.'s records was objectively reasonable, the Court finds that Defendants "ha[ve] not shown at this point that reasonable persons in her

---

[8] Defendants argue that "it was certainly not clearly established at the time of the events underlying the claims that the forwarding of referral packets containing redacted records to potential educational placements for a classified student whose parents refused to consent to the release of such records despite acknowledging an out-of-district placement was appropriate . . . in an effort to comply with its obligations under the IDEA to provide a free and appropriate public education to the student rose to the level of a constitutional violation of the student's or parents' due process rights." (Defs.' Mem. 15.) However, this attempt to overly narrow the inquiry proves unavailing, as "[a] court need not have passed on the identical course of conduct in order for its illegality to be 'clearly established.'" *Williams v. Greifinger*, 97 F.3d 699, 703 (2d Cir. 1996); *see also Fleming v. State Univ. of N.Y.*, 502 F. Supp. 2d 324, 344 (E.D.N.Y. 2007) (same). As the cited case law makes clear, here "the right allegedly violated"— i.e., W.E's right to privacy of his confidential educational and medical records—has been "established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012) (citation and internal quotation marks omitted).

position would not have understood that their conduct was within the scope of the established

prohibition." *Fleming v. State Univ. of N.Y.*, 502 F. Supp. 2d 324, 345 (E.D.N.Y. 2007)

(alteration and internal quotation marks omitted).  The Amended Complaint specifically alleges

that Coughlin disclosed W.E.'s confidential medical information "without parental consent and,

indeed, against the express statements of the student's parents."  (Am. Compl. ¶ 136.)  It may be

that discovery will reveal facts sufficient to show that it was objectively reasonable for Coughlin

to believe that such conduct was lawful.  At this early stage, however, Coughlin is not entitled to

dismissal on qualified immunity grounds.

 Accordingly, the Court denies the Motion as to Plaintiffs' due process claim.

 <u>2.  Equal Protection</u>

 Plaintiffs further allege that "Coughlin's disclosure of W.E.'s confidential

records . . . was selective in comparison to other District students for whom the District

and . . . Coughlin had considered an out-of-District placement."  (*Id.* ¶ 148.)

 Because Plaintiffs do not claim that W.E. is a member of a constitutionally protected

class, they may bring their equal protection claim pursuant to one of two theories:  "class of

one," or selective enforcement.  *See Witt v. Vill. of Mamaroneck*, 992 F. Supp. 2d 350, 359

(S.D.N.Y. 2014).  Under either theory, a plaintiff must allege differential treatment from

"similarly situated" individuals in order to state a viable equal protection claim.  *See Ruston v.

Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59–60 (2d Cir. 2010) (affirming dismissal of a

"class of one" claim based on the plaintiffs' failure to adequately allege that any comparators

"sufficiently similar" were treated more favorably than the plaintiffs); *Church of Am. Knights of

the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004) ("A selective enforcement claim

requires, as a threshold matter, a showing that the plaintiff was treated differently compared to others similarly situated.").[9]

Plaintiffs here have failed to do so.  Rather, the Amended Complaint merely alleges that "Coughlin, during her employment with the District, had not previously disclosed confidential education and medical records to potential placement locations without the express consent of a student's parents, and had not disclosed such information when the student's parents had expressly informed her that they were withholding consent."  (Am. Compl. ¶ 146.)  This allegation, however, fails to identify "any 'similarly situated' individual, much less one who was treated differently than [W.E.]."  *MC v. Arlington Cent. Sch. Dist.*, No. 11-CV-1835, 2012 WL 3020087, at *7 (S.D.N.Y. July 24, 2012).  Notwithstanding Plaintiffs' contention that "this single instance" is "sufficient" to show "different treatment from other similarly situated students," (*see*

---

[9] There has been some disagreement within the Second Circuit regarding the degree of similarity that a plaintiff must show in order to adequately allege an equal protection claim under the selective enforcement theory.  *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693–97 (S.D.N.Y. 2011) (discussing the alternative standards and surveying the disagreement among courts in the Second Circuit).  The Second Circuit has made clear that, to establish a "class of one" claim, "plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."  *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).  That is because, in such cases, similarity "is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain."  *Pappas v. Town of Enfield*, 18 F. Supp. 3d 164, 179 (D. Conn. 2014) (internal quotation marks omitted), *aff'd*, 602 F. App'x 35 (2d Cir. 2015).  The disagreement within the Second Circuit is over whether selective enforcement cases require the same high degree of similarity, or whether a "slightly less stringent" standard applies wherein plaintiffs must show that the comparators are "similarly situated in all material respects."  *Mosdos*, 815 F. Supp. 2d at 696 (internal quotation marks omitted).  The Court is not required to determine which standard should be applied to the equal protection claim in this Action because the allegations in the Amended Complaint can satisfy neither.  *See Witt*, 992 F. Supp. 2d at 359 n.9 (noting disagreement as to the meaning of "similarly situated" but declining to decide which standard to apply where the plaintiff's claim would fail under either standard).  Because Plaintiffs fail to adequately plead the existence of comparators who are similarly situated to W.E. in all material respects, it follows that they have not met the higher threshold applicable to "class of one" claims.

Pls.' Mem. of Law in Opp'n to Mot. ("Pls.' Opp'n") 19–20 (Dkt. No. 34)), the Amended

Complaint does not actually plead the existence of potential comparators, let alone offer any

facts from which the Court could analyze the degree of similarity, *see Camac v. Long Beach City

Sch. Dist.*, No. 09-CV-5309, 2011 WL 3030345, at *16 (E.D.N.Y. July 22, 2011) (dismissing

"class of one" claim in the absence of "allegations showing how another person's circumstances

are prima facie identical to [those of the plaintiffs' son]" (alteration and internal quotation marks

omitted)); *Pape v. Bd. of Educ. of the Wappingers Cent. Sch. Dist.*, No. 07-CV-8828, 2009 WL

3151200, at *7 (S.D.N.Y. Sept. 29, 2009) (dismissing equal protection claim on the basis that the

"[p]laintiffs have not identified any 'similarly situated' person . . . who was treated differently

from [the] [p]laintiffs"); *Bikur Cholim, Inc. v. Vill. of Suffern*, 664 F. Supp. 2d 267, 277–78

(S.D.N.Y. 2009) (dismissing equal protection claim because the "plaintiffs have made no

allegations of similarly situated property owners," and "[w]ithout any comparators . . . [the]

plaintiffs' claim under the Equal Protection Clause cannot stand"); *Talley v. Brentwood Union

Free Sch. Dist.*, No. 08-CV-790, 2009 WL 1797627, at *8 (E.D.N.Y. June 24, 2009) (dismissing

"class of one" claim because "the absence of factual allegations of any similarly situated

individual is fatal to [the] claim").

   Because Plaintiffs have not satisfied this threshold requirement, their equal protection

claim is dismissed.

   3. *Monell*

   Plaintiffs seek to hold the District liable for "a continuing pattern and practice of

improper disclosures [of confidential information]."  (Am. Compl. ¶ 15; *see generally id.*

¶¶ 102–25.)

It is well established that a municipal defendant "cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (italics omitted); *see also Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (reaffirming that "a municipality cannot be held liable on a respondeat superior basis for the tort of its employee" (italics omitted)).  Rather, for a plaintiff to prevail on a § 1983 claim against a municipal employer, he or she must satisfy the requirements set forth in *Monell* and its progeny, which adhere to the well-settled principle that "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell*, 436 U.S. at 691; *see also Hunter v. City of N.Y.*, 35 F. Supp. 3d 310, 322 (E.D.N.Y. 2014) ("In order to sustain a claim for relief pursuant to § 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).  In addition, a plaintiff must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury.  *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the

municipality was the moving force behind the alleged injury" (internal quotation marks omitted)); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *12 (S.D.N.Y. Mar. 26, 2015) ("[T]here must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." (internal quotation marks omitted)); *Johnson v. City of N.Y.*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that "a plaintiff must establish a causal connection—an affirmative link—between the [municipal] policy and the deprivation of his [or her] constitutional rights" (internal quotation marks omitted)).

"Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Tieman*, 2015 WL 1379652, at *12 (alteration and internal quotation marks omitted); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . [that] can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

Here, the Amended Complaint alleges two theories of liability that seek to satisfy the "policy and custom" requirement:  (a) the District failed to properly train its employees regarding the protection of confidential information, (*see generally* Am. Compl. ¶¶ 102–14); and (b) Coughlin, as a policymaker for the District, adopted a policy of disclosing confidential documents without parental consent, (*see generally id.* ¶¶ 115–25).[10]

---

[10] It warrants mention that the Amended Complaint does not claim an unconstitutional policy on the part of the District.  Quite the contrary, Plaintiffs allege that Coughlin violated District policy in releasing W.E.'s records.  (*See, e.g.*, Am. Compl. ¶ 81 ("District Policy and

a.  Failure to Train

According to the Amended Complaint, "the District failed to promulgate, implement, instruct[,] or enforce appropriate policies to prevent unauthorized use, disclosure[,] or dissemination of the contents of student files and to limit access to such files to appropriately authorized personnel with a need to have access to the information contained therein."  (*Id.* ¶ 104.)  Plaintiffs further allege that "[t]his failure to adequately train was a substantial contributing factor in the distribution by . . . [D]efendants of confidential, personal[,] and private information about W.E. to persons who were not authorized to receive that information."  (*Id.*)

A "municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004); *see also Johnson*, 2011 WL 666161, at *3 (explaining that a plaintiff may demonstrate the existence of a custom or policy by alleging "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees" (internal quotation marks omitted)).  A municipality's failure to train constitutes deliberate indifference when:  (1) "a policymaker knows to a moral certainty that [his or] her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee

---

Regulations required that the District and . . . Coughlin . . . protect and preserve the confidential records of students."); *id.* ¶ 90 ("These improper actions from [Coughlin] were deliberate and intentional and violated District policy and violated W.E.'s and his parents' civil rights and right of privacy.").)

will frequently cause the deprivation of a citizen's constitutional rights." *Jenkins v. City of N.Y.*, 478 F.3d 76, 94 (2d Cir. 2007) (internal quotation marks omitted); *see also Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (noting that a failure to train "satisfies the policy or custom requirement only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need"). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation marks omitted).[11]

In support of their failure-to-train theory, Plaintiffs allege that the "Superintendent was aware that District employees had previously disclosed confidential information pertaining to W.E." before July 2013. (Am. Compl. ¶ 106.)[12] The Amended Complaint, however, identifies only two prior releases over the course of two years: in September 2011, the fact that W.E.'s parents were seeking tuition reimbursement was "released into the community," (*id.* ¶ 16), and shortly thereafter, the District "used the student's identification" in a public forum, (*id.* ¶ 28). Not only isolated, these incidents are also factually dissimilar from the conduct giving rise to the instant Action, i.e., the deliberate forwarding of confidential psychological and other records to

---

[11] Notably, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61; *see also Tuttle*, 471 U.S. at 822–23 ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*.").

[12] By Plaintiff's own allegation, in 2012 the District conducted training on the protection of confidential information, (*see* Am. Compl. ¶ 36), albeit one Plaintiffs that deemed inadequate, (*id.* ¶ 38). Interestingly, while their opposition relies heavily on *L.S. v. Mount Olive Board of Education*, 765 F. Supp. 2d 648 (D.N.J. 2011), (*see* Pls.' Opp'n 5–7, 16), that court found the allegation that "the training sessions conducted by [the defendant] to maintain the confidentiality of student records were inadequate" to "fit squarely into the categories of what does *not* rise to the level of deliberate indifference," *Mount Olive*, 765 F. Supp. 2d at 660.

identified possible placements for W.E.  (*See id.* ¶ 57.)  Indeed, it is far from clear that these other incidents approach the constitutional boundaries of the right of privacy, as evident from the lack of authority coming from Plaintiffs.[13]  In light of the sparseness and dissimilarity of the relevant incidents cited, the Court cannot infer from the Amended Complaint "[a] pattern of similar constitutional violations," *Connick*, 563 U.S. at 62, let alone one that more training or supervision could have alleviated, *see, e.g.*, *Pluma v. City of N.Y.*, No. 13-CV-2017, 2015 WL 1623828, at *12 (S.D.N.Y. Mar. 31, 2015) (holding that allegations of a "handful of dissimilar incidents occurring over the course of more than a decade [was] too sparse to put the [c]ity on notice that the [police department's] training program produces officers who are likely to commit constitutional violations"); *Lapaix v. City of N.Y.*, No. 13-CV-7306, 2014 WL 3950905, at *9 (S.D.N.Y. Aug. 12, 2014) (dismissing failure-to-train claim because the "[p]laintiff cannot base a claim for a pattern of constitutional violations on one other incident and general allegations regarding [the defendants' improper] motivation").

While Plaintiffs allege that "[t]he District . . . failed to establish a check or confirmation system in advance of the disclosure of education records" so as "to protect against the deliberate

---

[13] Of note, the facts alleged fall well below the threshold found by other courts to plausibly allege the deliberate indifference necessary for municipal liability under § 1983.  *See, e.g.*, *Edwards v. City of N.Y.*, No. 14-CV-10058, 2015 WL 5052637, at *6 (S.D.N.Y. Aug. 27, 2015) (denying motion to dismiss where the plaintiff "cited government reports, news articles[,] and [18] prior lawsuits" to "create a plausible inference that the [c]ity has not meaningfully acted to improve training and/or supervision to prevent further incidents"); *McCants v. City of Newburgh*, No. 14-CV-556, 2014 WL 6645987, at *4 (S.D.N.Y. Nov. 21, 2014) (denying motion to dismiss where the plaintiff cited 17 similar prior lawsuits to evidence that the city was on prior notice of the possible conduct), *clarified by and reconsideration denied*, 2014 WL 7398910 (S.D.N.Y. Dec. 9, 2014); *Bertuglia v. City of N.Y.*, 839 F. Supp. 2d 703, 738–39 (S.D.N.Y. 2012) (denying motion to dismiss where the plaintiff cited over 15 cases of similar misconduct, as well as a state criminal court opinion documenting misconduct in the plaintiff's case, thereby "allow[ing] the [c]ourt to draw the inference that there is a history of [misconduct]"), *appeal dismissed*, 509 F. App'x 43 (2d Cir. 2013).

21

or accidental disclosure of confidential records," (Am. Compl. ¶ 105), this assertion does not

"nudge[]" this theory of municipal liability "across the line from conceivable to plausible,"

*Twombly*, 550 U.S. at 555.  "[S]howing merely that additional training would have been helpful

in making difficult decisions does not establish municipal liability," *Connick*, 563 U.S. at 68; *see*

*also Pluma*, 2015 WL 1623828, at *12 ("[A] complaint must plausibly allege that the

municipality was 'on actual or constructive notice that a particular omission in [its] training

program causes [municipal] employees to violate citizens' constitutional rights' and nonetheless

chose to maintain that training program." (second alteration in original) (quoting *Connick*, 563

U.S. at 61)), and Plaintiffs offer no more than this unadorned reference to a broadly defined

deficiency in the District's training procedures, *see Marte v. N.Y.C. Police Dep't*, No. 10-CV-

3706, 2010 WL 4176696, at *3 (S.D.N.Y. Oct. 12, 2010) (finding the plaintiffs failed to state a

claim against the municipal defendant where "they have not pled any facts that plausibly allege a

specific deficiency in the training or supervision program that accounts for deprivation of their

constitutional rights").

    The allegations contained in the Amended Complaint simply cannot meet the high

standard required to plead that the District was on notice that its training program was so

deficient that by failing to alter it, the District was essentially complicit in the violation of W.E.'s

constitutional rights.  *See Cash v. Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (explaining that

a failure to train must be "the functional equivalent of a decision by the [municipality] itself to

violate the Constitution" (internal quotation marks omitted)).  Accordingly, this theory of

municipal liability will not support a claim against the District.

### b.  Policymaker

Plaintiffs separately contend that Coughlin, in her role as PPS Director, "created a new policy attributable to the District when she determined that the District could release or otherwise disclose confidential medical and educational records without consent as part of the [CSE] process."  (Am. Compl. ¶ 119.)

"When an official has final authority over significant matters involving the exercise of discretion, the choices he [or she] makes represent government policy."  *Nagle v. Marron*, 663 F.3d 100, 116 (2d Cir. 2011) (internal quotation marks omitted).  Where, as here, a plaintiff "seeks to hold a municipality liable for a single decision by a municipal policymaker, the plaintiff must show that the official had final policymaking power."  *City of Waterbury*, 542 F.3d at 37 (alterations, citation, and internal quotation marks omitted).  In this context, "the critical inquiry is not whether an official generally has final policymaking authority; rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit."  *Id.*; *see also Eldridge v. Rochester City Sch. Dist.*, 968 F. Supp. 2d 546, 562 (W.D.N.Y. 2013) ("An official may be a final policymaker as to some issues but not as to others.").  "[W]hether a given official is the . . . final policymaking official in a given area is a matter of law to be decided by the court" "*before* the case is submitted to the jury."  *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (internal quotation marks omitted); *see also City of Waterbury*, 542 F.3d at 37 ("Whether an official has final policymaking authority is a legal question, determined on the basis of state law.").  Further, "[w]here a plaintiff relies not on a formally declared or ratified policy, but rather on the theory that the conduct of a given official represents official policy, it is incumbent on the plaintiff to establish that element as a matter of law."  *Jeffes*, 208 F.3d at 57−58; *see also T.E. v. Pine Bush*

23

*Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 372 (S.D.N.Y. 2014) (same).  Notably, the Second Circuit

has "explicitly rejected the view that mere exercise of discretion [is] sufficient to establish

municipal liability." *Anthony v. City of N.Y.*, 339 F.3d 129, 139 (2d Cir. 2003) (citing *Jeffes*, 208

F.3d at 57).

   In the instant Action, Plaintiffs allege that "Coughlin, as an administrator for the District,

possesses policy making authority within the District's Department of [PPS]."  (Am. Compl.

¶ 118.)  However, Plaintiffs cite no state or county law that actually vests Coughlin with final

policymaking authority over the maintenance and protection of student records.  Because "[t]he

question of which municipal officials are final policymakers is one of law, and the question is

resolved by looking to relevant state law," *Burhans v. Cty. of Putnam*, No. 06-CV-8325, 2011

WL 1157693, at *6 (S.D.N.Y. Mar. 25, 2011) (alteration and internal quotation marks omitted),

this defect proves fatal, *see Anthony*, 339 F.3d at 139 (rejecting the plaintiff's argument that a

police sergeant was a final policymaker because the plaintiff did "not provide any analogue to

the state-law authority that a county sheriff possesses, and instead argues only that [the sergeant]

is a final decision-maker because he had discretion to determine how to handle [a] particular

situation"); *Canner v. City of Long Beach*, No. 12-CV-2611, 2015 WL 4926014, at *6 (E.D.N.Y.

Aug. 18, 2015) (noting that the court previously had dismissed the plaintiffs' *Monell* claim under

Rule 12(b)(6) "since [the complaint] did not reference any state law supporting their claim that

[the defendant] was a final policymaker"); *accord Santiago v. Warminster Twp.*, 629 F.3d 121,

135 n.11 (3d Cir. 2010) (holding that while the determination of whether a police chief "is a final

policymaker is ultimately a legal rather than a factual question, that does not relieve [the

plaintiff] of the obligation to plead in some fashion that [the police chief] had final policy making authority, as that is a key element of a *Monell* claim" (citation omitted)).[14]

Thus, Plaintiffs have plausibly alleged neither a failure to train municipal employees, nor any unconstitutional act by a policymaker with final decision-making authority. The District is therefore entitled to dismissal of the federal claim against it.

### 4.  State-Law Claims

In addition to the federal constitutional claims addressed above, the Second Amended Complaint contains two claims brought under New York law:  negligence and right to privacy. (*See generally* Am. Compl. ¶¶ 78–101, 164–73.)

Because these causes of action do not present a federal question, *see* 28 U.S.C. § 1331, and because Plaintiffs do not allege diverse citizenship with respect to Defendants, *see id.* § 1332, the Court may entertain these claims only pursuant to a theory of supplemental jurisdiction, *see id.* § 1367.  Here, Plaintiffs' due process claim under § 1983 has survived the instant Motion, and the abovementioned state-law claims arise out of the same case or

---

[14] Plaintiffs, in their opposition papers, point to the District's established policy regarding IEPs as purported evidence of Coughlin's policymaking authority.  (*See* Pls.' Opp'n 13–14 (citing Hendrick Hudson School District Policy ("District Policy") 4321).)  Yet, while the District Policy affirms that the Board "recognizes the importance of ensuring the confidentiality of personally identifiable data pertaining to a student with a disability," (District Policy 4321.5), it does not follow that Coughlin is vested "with the oversight responsibility for protecting and preserving the confidentiality of student records," (Pls.' Opp'n 14).  Indeed, District administrators like Coughlin may be directed to "include with each IEP copy . . . a copy of the Board's policy on student records," (District Policy 4321.5), but that directive is a far cry from establishing that Coughlin is a final policymaker, let alone a final policymaker "with respect to the particular conduct challenged in the [instant Action]," *City of Waterbury*, 542 F.3d at 37. Similarly, that Coughlin takes part in "determin[ing] whether a student is eligible for special education and related services," (District Policy 4321), does not suggest she has any sort of policymaking authority over the use of those students' records.

The Court may properly consider the District Policy as a public record, of which judicial notice may be taken or, in the alternative, a document incorporated into the Amended Complaint by reference.  *See Kalyanaram*, 742 F.3d at 44 n.1.

controversy—i.e., the July 2013 disclosure of records pertaining to W.E.  Accordingly, the Court exercises supplemental jurisdiction over these claims pursuant to § 1367(a).  *See Oladokun v. Ryan*, No. 06-CV-2330, 2011 WL 4471882, at *11 (S.D.N.Y. Sept. 27, 2011) (explaining that § 1367 "confers mandatory supplemental jurisdiction over state law claims that 'form part of the same case or controversy' as claims over which the district courts have original jurisdiction" (quoting 28 U.S.C. § 1367)); *Bu ex rel. Bu v. Benenson*, 181 F. Supp. 2d 247, 251 (S.D.N.Y. 2001) ("Essentially, supplemental jurisdiction will be found where the state and federal claims arise from the same basic facts." (italics omitted)).[15]

---

[15] Defendants argue that any state-law claims against Coughlin "must be dismissed as a matter of law because [she] was not named as a respondent in the Notice of Claim."  (Defs.' Mem. 17.)  However, the New York Court of Appeals has yet to resolve a split among the intermediate appellate courts on whether General Municipal Law § 50-e requires that individual defendants be named in a notice of claim.  *See Bailey v. City of N.Y.*, 79 F. Supp. 3d 424, 453 (E.D.N.Y. 2015) (discussing split between Fourth Department and First Department); *Reyes v. City of N.Y.*, 992 F. Supp. 2d 290, 301 (S.D.N.Y. 2014) (same).  The Fourth Department has held that a plaintiff need not name each individual defendant in a notice of claim, *see Goodwin v. Pretorius*, 962 N.Y.S.2d 539, 545 (App. Div. 2013) ("[C]ourts have misapplied or misunderstood the law in creating, by judicial fiat, a requirement for notices of claim that goes beyond those requirements set forth in the statute.  If the legislature had intended that there be a requirement that the individual employees be named in the notices of claim, it could easily have created such a requirement."), while the First Department has taken the opposite approach, *see Cleghorne v. City of N.Y.*, 952 N.Y.S.2d 114, 117 (App. Div. 2012) ("[T]he action cannot proceed against the individual defendants because they were not named in the notice of claim.").

"When the highest state court has not ruled directly on an issue presented, a federal court must make its best estimate as to how the state's highest court would rule in the case."  *Reyes*, 992 F. Supp. 2d at 301 (alteration and internal quotation marks omitted).  A number of courts in the Second Circuit have predicted that the New York Court of Appeals will likely adopt the Fourth Department's "well-reasoned conclusion that there is no requirement that individual defendants be specifically named in the [n]otice of [c]laim," *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 397(S.D.N.Y. 2013); *see also Bailey*, 79 F. Supp. 3d at 453; *Reyes*, 992 F. Supp. 2d at 302, and this Court follows their lead.  Thus, it is irrelevant that Plaintiffs' Notice of Claim did not name Coughlin as a respondent.

a. Negligence

Plaintiffs assert a claim for negligence against Defendants, alleging that Defendants "breached their duty to maintain the confidentiality of W.E.'s [s]tudent [r]ecords" when Coughlin disclosed "confidential information specific to W.E." without parental consent. (Am. Compl. ¶¶ 83, 85.)

Under New York law, "a plaintiff must establish three elements to prevail on a negligence claim:  (1) the existence of a duty on [the] defendant's part as to [the] plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 367 (S.D.N.Y. 2008) (internal quotation marks omitted), *aff'd*, 337 F. App'x 7 (2d Cir. 2009).  "Although juries determine whether and to what extent a particular duty was breached, it is for the courts first to determine whether any duty exists." *Am. Ins. Co. v. City of Jamestown*, 914 F. Supp. 2d 377, 386 (W.D.N.Y. 2012) (quoting *Darby v. Compagnie Nat'l Air France*, 753 N.E.2d 160, 162 (N.Y. 2001)).  If "the defendant owes no duty to the plaintiff, the action must fail." *Diego Beekman Mut. Hous. Ass'n Hous. Dev. Fund Corp. Hdfc v. Dish Network, L.L.C*, No. 15-CV-1094, 2016 WL 1060328, at *4 (S.D.N.Y. Mar. 15, 2016) (quoting *Darby*, 753 N.E.2d at 162).

In alleging "[P]laintiffs were injured and suffered mental anguish, and . . . have also suffered injury to their reputations," (Am. Compl. ¶ 96; *see also id.* ¶ 98 ("Plaintiffs have also suffered nominal damages in the intentional release of these confidential records.")), the Amended Complaint makes clear that this cause of action is brought on *Plaintiffs'* behalf, rather than on behalf of W.E.  Plaintiffs, however, have not adequately pleaded that Defendants

breached any duty owed to them personally.[16]  To the contrary, the allegations contained in the

Amended Complaint point only to the "duty of confidentiality *owed to W.E.*" by Defendants.

(*Id.* ¶ 92 (emphasis added); *see also, e.g.*, *id.* ¶ 80 ("[D]efendants had a duty to ensure the

confidentiality of W.E.'s [s]tudent [r]ecords."); *id.* ¶ 100 ("The District and . . . Coughlin were

fully aware of their obligation to preserve and protect its students, including W.E., yet willfully

disregarded and violated that obligation.").)  This Court, moreover, has found no authority

suggesting the existence of any duty owed by a school district and its administrators to a

student's parents.  *Cf. JG & PG ex rel. JGIII v. Card*, No. 08-CV-5668, 2009 WL 2986640, at

*11 (S.D.N.Y. Sept. 17, 2009) (finding that the plaintiff-parents could not state a claim for

negligence because they "were owed no direct duty by [the school principal, superintendent, and

district]"); *Murray v. Research Found. of State Univ. of N.Y.*, 723 N.Y.S.2d 805, 807 (App. Div.

2001) (finding that a school district owes a duty of reasonable care to their *students*).[17]

    In the absence of an identified duty owed to Plaintiffs themselves, the Court dismisses

their negligence claim.

### b.  Right of Privacy

    Lastly, the Amended Complaint alleges that Defendants "violated W.E.'s right to privacy

and other civil rights, recognized within New York law and the common law."  (Am. Compl.

¶ 169.)  In their opposition papers, Plaintiffs concede that their "claim for denial of a common

---

[16] Though W.E., too, is a plaintiff in the present Action, this Court and the Amended Complaint both define "Plaintiffs" as referring to his parents, W.A. and M.S., who have brought suit on his and their own behalf.

[17] In fact, notwithstanding Plaintiffs' repeated citation to *Mount Olive*, that court dismissed negligence claims brought on behalf of a student's parents on the basis that the "[a]mended [c]omplaint [did] not specifically allege that [the] [d]efendants breached a duty owed, or caused damage to, [the parent-plaintiffs]."  765 F. Supp. 2d at 664.

law right of privacy does face a stumbling block"—namely, that "New York courts have sidestepped finding a common-law right of privacy."  (Pls.' Opp'n 7 n.2.)

That is a bit of understatement, as state and federal courts alike have made clear that New York does not recognize a common-law right of privacy.  *See, e.g.*, *Greene v. Paramount Pictures Corp.*, — F. Supp. 3d —, 2015 WL 5794313, at *4 (E.D.N.Y. Sept. 30, 2015); *Messenger ex rel. Messenger v. Gruner + Jahr Printing & Publ'g*, 727 N.E.2d 549, 551 (N.Y. 2000); *Farrow v. Allstate Ins. Co.*, 862 N.Y.S.2d 92, 93 (App. Div. 2008).  Indeed, New York only recognizes torts of invasion of privacy within the confines of Civil Rights Law §§ 50 and 51, *see Farrow*, 862 N.Y.S.2d at 93, which even Plaintiffs realize to be "an extraordinarily narrow privacy right," (Pls.' Opp'n 7 n.2).  Those statutes create a cause of action for the use of a person's name or likeness for advertising or trade purposes, without the person's consent.  N.Y. Civ. Rights Law §§ 50–51.  Clearly, Plaintiffs' allegations do not fall within that narrow fact pattern and thus are not covered by these statutory provisions.  *See Augustin v. Capital One*, No. 14-CV-179, 2015 WL 5657365, at *7 (E.D.N.Y. July 27, 2015) ("As [the] [p]laintiff's allegations are unrelated to the use of his name or likeness for advertising purposes, he would not be able to state a claim for invasion of privacy under state law . . . ."), *adopted by* 2015 WL 5664510 (E.D.N.Y. Sept. 24, 2015).

Nevertheless, Plaintiffs urge the Court to "take this opportunity to step in . . . and recognize the fundamental common-law right of privacy."  (Pls.' Opp'n 23.)  Yet, given the well-established precedent directly on point, this Court sees no reason to put its oar in the water and make a splash with respect to state privacy law.

III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted in part and denied

in part, without prejudice. Should Plaintiffs choose to file an amended complaint, they must do

so within 30 days of this Order, addressing the deficiencies outlined herein.

The Clerk of the Court is respectfully requested to terminate the pending Motion. (*See*

Dkt. No. 30.)

SO ORDERED.

DATED:     March 3 , 2016
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE